803 F.Supp. 1338 (1992)
UNITED STATES of America, Plaintiff,
v.
STATE OF ILLINOIS, James R. Edgar, Governor of the State of Illinois, Leigh Steiner, Acting Director, Illinois Department of Mental Health and Developmental Disabilities, and Kathleen A. Muniz, Superintendent, W.A. Howe Developmental Center, Defendants.
No. 92 C 0694.
United States District Court, N.D. Illinois, E.D.
September 29, 1992.
*1339 John R. Dunne, Asst. Atty. Gen., Arthur E. Peabody, Jr., Benjamin Schoen, Edward A. Stutman, Pamela K. Chen, Judith C. Preston, U.S. Dept. of Justice, Washington, D.C., Fred L. Forman, Elizabeth Muir Landes, U.S. Attys. Office, Chicago, IL, for plaintiff U.S.
Marita Clare Sullivan, Mitchell Bruce Katten, Ill. Atty. Gen. Office, Chicago, Ill., for defendants James R. Edgar, Leigh Steiner and Kathleen A. Muniz.

MEMORANDUM OPINION AND ORDER
PLUNKETT, District Judge.
This matter is before us on Plaintiff United States of America's (the "USA") Motion to Strike Affirmative Defenses and for Partial Summary Judgment. For the reasons set forth below, we grant the USA's motion to strike in part and deny it in part. Because we decide this motion as a motion to strike, the USA's request for the alternative relief of partial summary judgment is denied as moot.

Discussion
The USA has sued Defendants under the Civil Rights of Institutionalized Persons Act of 1980 ("CRIPA"), 42 U.S.C. § 1997 et *1340 seq., alleging that Defendants have failed to meet constitutionally-required minimum standards of conditions and care of involuntarily committed mentally retarded persons at the W.A. Howe Developmental Center ("Howe facility"). Defendants have denied these allegations and have asserted five affirmative defenses. The USA now moves under Rule 12(f) of the Federal Rules of Civil Procedure to strike those affirmative defenses or, in the alternative, for partial summary under Rule 56 on those defenses.
Rule 12(f) allows a party to move to strike material in a pleading under certain circumstances where that material is redundant, immaterial, impertinent or scandalous, or where it constitutes an insufficient defense.[1] As the Seventh Circuit has explained, "Affirmative defenses will be stricken `only when they are insufficient on the face of the pleadings.'" Williams v. Jader Fuel Co., Inc., 944 F.2d 1388, 1400 (7th Cir.1991), cert. denied, ___ U.S. ___, 112 S.Ct. 2306, 119 L.Ed.2d 228 (1992) (quoting Heller Financial v. Midwhey Powder Co., 883 F.2d 1286, 1294 (7th Cir. 1989)). We may grant a motion to strike only where it is plain that regardless of the facts that might be proven in support of the defense, the plaintiff would succeed on his or her claim. Id.
Here, the USA claims that Defendants have failed to meet the constitutional minimums set out by the Supreme Court in Youngberg v. Romeo, 457 U.S. 307, 102 S.Ct. 2452, 73 L.Ed.2d 28 (1981),[2] and it seeks injunctive relief requiring Defendants to comply with those standards. As noted above, Defendants have asserted five defenses. To determine the sufficiency of these defenses, we must consider whether, if Defendants successfully proved them, the USA would still be entitled to the relief it seeks.
Defendants' first defense alleges that the USA has failed to comply with all of the prefiling requirements contained in 42 U.S.C. § 1997b(a)(2). Section 1997b(a) requires that the United States Attorney General certify that all prefiling requirements of § 1997b(a) have been met. The USA attached the appropriate certification to its Complaint. Thus, the USA asserts, Defendants' affirmative defense challenges the validity of the certification itself, which Defendants may not do. We agree. In United States v. New York, 690 F.Supp. 1201 (W.D.N.Y.1988), the court reviewed the then-existing case law regarding this provision (which is still the same today), noting that two courts have held that the certification is nonreviewable,[3] while a third has allowed a challenge to the certification only on distinguishable facts.[4] 690 *1341 F.Supp. at 1204. The court also noted that similar civil rights statutory schemes and case law have held that certifications of this type may not be challenged. Id. We find this reasoning persuasive.[5] Defendants' first affirmative defense is stricken.
Next, Defendants assert that this lawsuit is prohibited by 42 U.S.C. § 1997i (1981), which provides that CRIPA does "not authorize promulgation of regulations defining standards of care." As we have already discussed, the USA has sued Defendants under CRIPA on the grounds that conditions and care at the Howe facility fall below constitutional minimums. Yet Defendants would have us believe that the same statute which authorizes the USA to sue also prohibits such a suit as the "promulgation of regulations," an absurd result. (If this is not Defendants' intention, the defense is meaningless.) Moreover, we believe § 1997i means only what is says, that the United States Attorney General may not, on the basis of CRIPA, establish regulations setting standards of care. This interpretation is bolstered by the Supreme Court's discussion in Youngberg regarding the exercise of professional judgment: "`the Constitution only requires that the courts make certain that professional judgment in fact was exercised.'" Youngberg, 457 U.S. at 321, 102 S.Ct. at 2461 (quoting Romeo v. Youngberg, 644 F.2d 147, 178 (3d Cir.1980) (Seitz, C.J., concurring)). As the Supreme Court explained,
[A] decision, if made by a professional, is presumptively valid; liability may be imposed only when the decision by the professional is such a substantial departure from accepted professional judgment, practice, or standards as to demonstrate that the person responsible did not base the decision on such a judgment.
457 U.S. at 323, 102 S.Ct. at 2462. Clearly, a CRIPA action by the Attorney General to require a state to comply with this constitutional standard is not equivalent to "the promulgation of regulations defining standards of care." 42 U.S.C. § 1997i (1981). We strike Defendants' second defense as well.
We move on to Defendants' third affirmative defense. In it, Defendants allege that they have been certified as eligible for Medicare funding by the Health Care Financing Administration. But they fail to tell us why this matters. The assertion of this defense injects into this lawsuit the issue of the standards for eligibility for Medicare funding.[6] If we suppose that Defendants successfully prove that they did indeed meet Medicare funding eligibility standards, we must next ask if this will preclude the USA from obtaining the relief it seeks. The obvious answer is no. To the extent Medicare funding eligibility standards are different than the minimum standards required by the Constitution, they are irrelevant and immaterial, for Defendants must still meet the constitutionally-required standards; to the extent the two standards are the same, the Medicare funding eligibility standard is redundant. Significantly, Defendants assert in their brief only that a decision on the merits of this defense is premature at this stage; they do not offer one word of explanation as to the relevance of Medicare funding eligibility standards to the question of whether the conditions and care at the Howe facility meet the requirements of the *1342 Constitution. Defendants' third affirmative defense is stricken.
Defendants' fourth affirmative defense is that they have in fact met the constitutional minimums set out in Youngberg. The USA asserts that because Defendants denied the material allegations of the Complaint, this defense is redundant. In a technical sense, the USA may be correct, but the relevance and materiality of this defense are obvious. Since the USA has not demonstrated any harm either to it or to the efficient conduct of this case if the defense stands, we deny the motion to strike as to Defendants' fourth affirmative defense.
Finally, as their fifth affirmative defense, Defendants allege that the lawsuit is inconsistent with 42 U.S.C. § 1997g. That provision states:
It is the intent of Congress that deplorable conditions in institutions covered by this subchapter amounting to deprivations of rights protected by the Constitution or laws of the United States be corrected, not only by litigation as contemplated by this subchapter, but also by the voluntary good faith efforts of agencies of Federal, State, and local governments. It is the further intention of Congress that where Federal funds are available for use in improving such institutions, priority should be given to the correction or elimination of such unconstitutional or illegal conditions which may exist. It is not the intent of this provision to require the redirection of funds from one program to another or from one State to another.
42 U.S.C. § 1997g (1981) (emphasis added). Defendants explain in their brief that "if evidence comes to light that the plaintiff has failed to comply with [this section] it could effect if equitable relief could be granted and the scope of any such relief." (Defs.' Br. at 8.) We note first that the only equitable relief sought by the USA is to require Defendants to ensure that constitutionally-required minimum standards are met at the Howe facility. Defendants' position regarding this defense is apparently that if the USA has violated § 1997g, then we may not enjoin Defendants from violating the constitutional rights of the patients at the Howe facility.[7] For obvious reasons, we do not agree. We strike Defendants' fifth affirmative defense.

Conclusion
For the reasons set forth above, we grant Plaintiff USA's Motion to Strike as to Defendants' first, second, third and fifth affirmative defenses. We deny the motion to strike as to Defendants' fourth affirmative defense. Because we have decided this motion as a motion to strike, the USA's request for the alternative relief of partial summary judgment on the affirmative defenses is denied as moot.
NOTES
[1] Rule 12(f) states:

Upon motion made by a party before responding to a pleading, or if no responsive pleading is permitted by these rules, upon motion made by a party within 20 days after the service of the pleading upon the party or upon the court's own initiative at any time, the court may order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter.
Fed.R.Civ.P. 12(f) (1991). Since no responsive pleading to an answer is allowed unless a counterclaim is raised, Williams v. Jader Fuel Co., Inc., 944 F.2d 1388, 1399 (7th Cir.1991), cert. denied, ___ U.S. ___, 112 S.Ct. 2306, 119 L.Ed.2d 228 (1992), the USA's motion must have been filed within twenty days of service of the answer to be timely. Defendants filed their Answer and Affirmative Defenses on April 3, 1992, and the USA filed this motion on April 21, 1992, so the USA was within the twenty-day limitation.
[2] These rights, which arise under the Due Process Clause of the Fourteenth Amendment, include the right to "reasonable care and safety, [the right to] reasonably nonrestrictive confinement conditions, and [the right to] such training as may be required by these [constitutionally protected] interests." Youngberg, 457 U.S. at 324, 102 S.Ct. at 2462.
[3] United States v. Massachusetts, No. 85-0632-M, slip op. (D.Mass. June 5, 1985); United States v. Oregon, No. 86-961-LE, slip op., 1987 WL 39761 (D.Or. Apr. 8, 1987).
[4] Defendants rely exclusively on this case, United States v. Hawaii, 564 F.Supp. 189 (D.Haw. 1983), to support their argument that we may inquire into the validity of the Attorney General's certification. In that case, the Attorney General's certification stated that he had complied with the prefiling requirements "to the fullest extent possible under the particular circumstances of this case, including the State's refusal to allow the Department of Justice to conduct an investigation of the subject institutions." United States v. Hawaii, 564 F.Supp. at 192. The court concluded, among other things, that the language of the certification "raise[d] questions about whether the Attorney General ha[d] given proper notice to State officials." Id. at 192-93.
[5] Defendants argue only that "if evidence comes to light that plaintiff's certification is lacking, this suit would have to be dismissed." (Defs.' Br. at 5.) Such speculation is insufficient to warrant an excursion into the collateral issue of the validity of the certification.
[6] Surprisingly, Defendants assert that this defense does not change the issues in this case. (Defs.' Br. at 7.) However, by asserting it, Defendants have undertaken the burden of proof on it and must therefore show what the Medicare funding eligibility standards are and that they in fact met those standards. These are indeed different issues than whether the conditions and care at the Howe facility meet the constitutional minimums set out in Youngberg.
[7] The suggestion here is clearly that lack of funding may excuse constitutional deprivations and that to the extent the USA has failed to provide funding to Defendants, the USA cannot seek to require Defendants to meet the minimum standards required by the Constitution. Defendants cite us no authority for this proposition, and we do not agree with it.